Herman Foster, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

442

Argued February 5, 1979, before Judges CRUMLISH, JR., WILKINSON, JR., and MENCER, sitting as a panel of three. Reargued October 2, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS, BLATT, DISALLE and MACPHAIL. Judges MENCER and CRAIG did not participate.

*Herman Foster,* petitioner, for himself.

*Edward P. Carey,* Assistant Attorney General, for respondent.

OPINION BY JUDGE ROGERS, November 28, 1979:

Herman Foster has appealed from the final administrative action of the Department of Public Welfare upholding the decision of a Hearing Examiner that the Philadelphia County Board of Assistance had properly determined that Foster and his wife were ineligible for General Assistance.

Mrs. Foster has multiple sclerosis, is bedfast and requires constant care of another person. Mr. Foster is and has been regularly employed and in 1977 earned $946 a month. His monthly total work-related expenses in 1977, including $430 paid to persons who attended Mrs. Foster while her husband was at work, were such that the family's adjusted income was less than the maximum allowance of income for a two-person household in Philadelphia of $247. Hence, the Fosters, who had been receiving General Assistance since 1972, were receiving in 1977 about $191 a month.

In 1976, Section 432.12(a) was added to the Public Welfare Code,[1] by Section 5 of the Act of July 9, 1976, P.L. 993, 62 P.S. §432.12(a). This draconian measure provides that in determining need for General Assistance, the Department shall take into consideration all income "excluding that amount equal to the expenses reasonably attributable to the earning of income up to twenty-five dollars ($25.00) per month . . . ." DPW then promulgated a regulation at 55 Pa. Code, §183.64(e)(1), as follows:

(e) Expense deductions from earned income (GA). Expense deductions from earned income will be as follows:

---

[1] Act of June 13, 1967, P.L. 31, *as amended.*

(1) Personal and work expenses for other than self-employment. The costs, not to exceed the total amount of $25, will be deducted from the earned income of each GA client 14 years of age or older for the following personal and work expenses attributable to the continued earning of such income:

(i) Expense for transportation to and from employment.

(ii) Expense of care of children or a sick or disabled adult if care cannot be provided by other family members, and if no other sound plan can be made for their care.

(iii) Deductions made by the employer over which the client has no control, such as, social security, income withholding tax, and wage tax. The deductions from income withholding tax will not exceed the amount shown in the Internal Revenue Service Tables shown in Appendices A and B of this chapter for the known dependents of the client.

(iv) Wage taxes paid directly by the governing authority.

The Department made a redetermination of the Fosters' grant giving effect to the statute and regulation. Since the exclusion of expenses attributable to the earning of income was limited by the statute and regulation to $25 a month, the Fosters' net monthly earned income was redetermined to be $871, an amount far in excess of the maximum monthly income allowed for a two-person Philadelphia household of $247. Although the Fosters' actual circumstances were the same before and after the Code was amended and the regulation adopted—that is, they had less than $247 net monthly income after expenses—their grant was discontinued.

Herman Foster, who is not a lawyer, represents himself and his wife. They appealed the determination of their ineligibility for General Assistance. At the hearing provided to them, the evidence which was adduced consisted only of factual matters relating to the Fosters' financial circumstances, Mr. Foster's description of the consequences to his household of the discontinuance of public assistance, and his plea for continued help. Specifically, no issues concerning the constitutionality of the statute and regulations were raised at that time.

In the appeal to this court the Fosters contend that Section 432.12(a) and the regulation at 55 Pa. Code §183.64(e)(1) violate their rights guaranteed by the Equal Protection Clause of the United States Constitution. Their argument is that the limitation of the exclusion of expenses attributable to earned income to $25 per month establishes classes of persons based upon the amount of such expenses; that workers with large work expenses are denied assistance although their net monthly incomes are less than the amount fixed as necessary for their subsistence whereas other workers with small work expenses remain entitled to assistance although their net monthly incomes may considerably exceed that of workers in the first class. We may infer from this argument that the Fosters contend that the classification established by the $25 limitation bears no rational relationship to a legitimate governmental interest. *Geduldig v. Aiello*, 417 U.S. 484 (1974); *Frontiero v. Richardson*, 411 U.S. 677 (1973); *Dandridge v. Williams*, 397 U.S. 471 (1970). Their brief suggests that the legitimate governmental interest in the grant of assistance to the poor is expressed by Section 401 of the Public Welfare Code, 62 P.S. §401:

It is hereby declared to be the legislative intent to promote the welfare and happiness of

all the people of the Commonwealth, by providing public assistance to all of its needy and distressed; that assistance shall be administered promptly and humanely with due regard for the preservation of family life, and without discrimination on account of race, religion or political affiliation; and that assistance shall be administered in such a way and manner as to encourage self-respect, self-dependency and the desire to be a good citizen and useful to society.

The Fosters say that the $25 limitation upon the amount of excludable work-related expenses is, to paraphrase the Code, a denial, not provision, of public assistance to the class of needy and distressed wage earners with unavoidable work expenses; and that assistance administered in this arbitrary fashion discourages rather than encourages self-dependency.

The Department on the other hand contends that the Legislature in choosing the amount of $25 as the limit on work-related expenses "decided that, in general, that amount represents the expenses that employed General Assistance recipients would have"; and that the "Legislature's decision to use a standard deduction is based on its desire to provide for the equitable distribution of Public Welfare funds." The problem is, however, that we are confronted with a record without evidence. There is no evidence that the Legislature decided that $25 was the expenses that employed General Assistance recipients would have —worse, there is no evidence of the work-related expense of workers upon which we might draw an inference that the Legislature had so decided. Nor is there evidence that the Legislature in adopting the limitation sought to promote a more equitable distribution of Public Welfare funds—worse, there is no evidence that the limitation tended to effect an equi-

table distribution of funds. We may assume that the limitation works to the economic benefit of the State by excluding a class of working poor from eligibility; but financial expediency alone does not justify an invidious classification:

> To be sure, the State may reduce or even eliminate entirely welfare payments if it chooses to conserve resources in this fashion; it may turn all beggars from its doors. But it may not arbitrarily turn away some who are in need while bestowing its charitable favors on others. There must be some otherwise legitimate purpose for excluding members of the class who are in fact deprived of the protection and privileges of existing laws. It is not enough to say that the class is excluded because money is saved.

*Smith v. Reynolds,* 277 F. Supp. 65, 68 (E.D. Pa. 1967), *aff'd sub nom., Shapiro v. Thompson,* 394 U.S. 618 (1969).

Since the limitation does not appear to us to be so patently rational as to require no justification, we are impelled to reverse the final administrative action and to remand to the Department of Welfare for a hearing at which evidence bearing on the relationship of the limitation to legitimate governmental interests may be shown. *See Hagan v. Lavine,* 415 U.S. 528 (1974). In remanding we remain mindful, of course, of the principles that one asserting the unconstitutionality of a statute bears the heavy burden of so demonstrating and that statutes are presumed to be constitutional.

The Department places great reliance on *Roundtree v. Berger,* 420 F. Supp. 282 (E.D. N.Y. 1976), *aff'd,* 430 U.S. 912 (1977) where a New York statute placing a limitation of $80 on work-related expenses but otherwise materially identical to the Pennsylvania

statute, was upheld. In the New York case, however, the record included evidence of the cost-effectiveness of the limitation, the means by which the $80 figure was arrived at and the place of the $80 limitation in the overall context of General Assistance in New York State. Specifically, there was evidence that the average work-related expenses of New York recipients were $75, although some working persons incurred more than $100 in such expenses. In addition, in New York the original limit of $60 was raised to $80 in 1974, an action shown to have cost the State more than one million dollars. The three judge *Roundtree* panel decided that New York could rationally have concluded that to eliminate the limitation entirely or to raise it further would result in excessive expenditures of limited funds. The record before us, devoid of evidence, furnishes nothing upon which we can base an inference, much less discern, if and how the Pennsylvania limitation relates to the State's interest in conducting a viable assistance program.

The Fosters also contend that General Assistance recipients are invidiously discriminated against because Aid for Families with Dependent Children recipients are not subjected to the $25 limitation of work-related expenses. The origins, purposes and funding of the two programs are clearly quite different. We do not think that the persons in both of these programs are so similarly situated that they may not reasonably be treated differently in this respect.

Finally, the Fosters attack the subsection (iii) of the regulation at 55 Pa. Code §183.64(e)(1) which includes within the $25 limitation amounts withheld from the worker's pay, such as Social Security and income wage taxes. They argue that this money is not actually available for current use and that the regulation therefore conflicts with Section 432.12(c) of the

Code describing as a starting point a determination of what income is actually available for current use. We agreed with this argument and struck down Section 183.64(e)(iii) in *Watson v. Department of Public Welfare*, 42 Pa. Commonwealth Ct. 181, 400 A.2d 669 (1979). Since the record shows that these deductions in this case amounted to $210 the exclusion of this additional amount from Mr. Foster's gross earnings would not render them eligible for assistance if the expenses of Mrs. Foster's care are not to be excluded from Mr. Foster's gross earnings. In any event, this matter will be before the Department upon remand.

ORDER

AND Now, this 28th day of November, 1979, the record is remanded to the Department of Public Welfare for further proceedings not inconsistent with this opinion.

---

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent.

I see no need for a remand since, as the majority notes, the heavy burden is upon the Claimant to prove the statute unconstitutional. Clearly, that burden has not been carried. Although I have substantial sympathy for the Claimant, his remedy must be with the Legislature and not with the courts.

I would affirm the adjudication of the Department of Public Welfare.

Judge WILKINSON, JR. joins in this dissent.