Herman Foster, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

384

Argued June 8, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, CRAIG and MACPHAIL.

*M. Patricia Carroll, Carroll & Carroll,* for petitioner.

*Jason W. Manne,* Assistant Counsel, for respondent.

OPINION BY JUDGE ROGERS, October 18, 1982:

Herman Foster seeks review of an order of the Department of Public Welfare entered May 6, 1981, following an evidentiary hearing conducted pursuant to a remand order of this court, denying his appeal from the Department's determination that he is ineligible for benefits under the General Assistance (GA)

program and sustaining the constitutional validity of a regulation of the Department found at 55 Pa. Code §183.64(e)(1), by which was established a $25 maximum limitation on work-related expenses deductible from gross income for the purpose of determining GA eligibility. Specifically, the Department held that the regulation challenged is consistent with the statutory authority of Section 5 of the Act of July 9, 1976, P.L. 993, 62 P.S. §432.12(a)[1] and is a proper exercise of the Department's authority to administer efficiently, economically, and appropriately the funds available for General Assistance. Foster here renews his challenge to the constitutionality of the $25 ceiling; arguing that he is, by its operation, denied equal protection of the laws. We affirm.

When this matter was previously before us, we held that the inadequacy of the evidentiary record precluded our review. The factual context is set forth in the opinion accompanying our earlier order, *Foster v. Department of Public Welfare,* 47 Pa. Commonwealth Ct. 441, 408 A.2d 216 (1979) *(Foster I),* and will not be repeated here in any detail. It suffices to note that the petitioner is trained and presently employed as a professional engineer and in 1977 he earned $11,352.00. His wife suffers from multiple sclerosis, a degenera-

---

[1] The statutory provision is as follows:

In determining need for general assistance, the department shall take into consideration all income, excluding that amount equal to the expenses reasonably attributable to the earning of income up to twenty-five dollars ($25) per month, of all members of the assistance unit who are fourteen years of age or older. In addition to said work related expenses, the first twenty dollars ($20) plus fifty percent of the next sixty dollars ($60) shall be deducted from the gross monthly wages of each employed recipient of general assistance. The general assistance grant shall be computed on the remainder.

62 P.S. §432.12(a).

tive disease of the central nervous system, and requires constant care of another person. In 1977 the petitioner's work-related expenses, including $430 per month paid to persons who care for his wife while he was at work, were such that his income after payment of these expenses was less than the maximum monthly allowance for a two-person household in Philadelphia. Accordingly, the Fosters, who had been receiving GA benefits since 1972, received such benefits in the approximate amount of $191 per month in 1977.

In 1976, the Public Welfare Code was amended and Section 432.12 referred to above was added. This provision changed the method of computation used for determining the available income of an employed applicant for General Assistance. Previously, all expenses attributable to the earning of income, including such expenses as those related to commuting, uniforms, and the care of resident dependents during working hours, were deductible without limit for the purpose of calculating the applicant's available income and corresponding need for assistance. Section 432.12 placed a ceiling of $25 on the deductibility of these expenses. The Department implemented this provision by promulgating a regulation found at 55 Pa. Code, §183.64 (e)(1) which provides:

*Expense deductions from earned income (GA).* Expense deductions from earned income will be as follows:

(1) *Personal and work expenses for other than self employment.* The cost, not to exceed the total amount of $25, will be deducted from the earned income of each GA client 14 years of age or older for the following personal and work expenses attributable to the continued earning of such income:

(i) Expenses for transportation to and from employment.

(ii) Expense of care of children or a sick or disabled adult if no other sound plan can be made for their care.

In June of 1977, the Philadelphia County Board of Assistance redetermined the Fosters' GA eligibility and found that although their financial circumstances were unaltered since last examined, by operation of the newly enacted deduction ceiling, the Fosters' excessive income disqualified them from the program. Because the petitioner's expenses, and especially those related to the care of his wife, were not considered to the extent that they exceeded $25 a month, the Board calculated the Fosters' net monthly income to be $871, a figure far higher than the $247 maximum permitted. The petitioner appealed from the redetermination and was given a hearing at which the hearing examiner found that the Fosters had been properly denied GA benefits. The petitioner then pursued his appeal to this Court resulting in our remand for a hearing at which "evidence bearing on the relationship of the limitation [$25] to legitimate governmental interests may be shown." *Foster I,* at 447, 408 A.2d at 219. Such evidence has been submitted by the Department and has been certified to this Court. This evidence resolves the issue of the constitutionality of the contested regulation.

It must be emphasized that the Petitioner does not contend that the resources devoted to the care of his wife are other than "income . . . actually available for [his] current use" within the meaning of Subsection (c) of 62 P.S. §432.12. *Cf. Watson v. Department of Public Welfare,* 42 Pa. Commonwealth Ct. 181, 400 A.2d 669 (1979). Such a contention would be unavailing. *See Department of Public Welfare v. Gilmore,* 25 Pa. Commonwealth Ct. 406, 360 A.2d 846 (1976); *Department of Public Welfare v. Ivy,* 18 Pa. Commonwealth Ct. 348, 336 A.2d 435 (1975). Moreover, the

Petitioner has not brought to this Court's attention any authority which would require the Department to disregard a portion of an applicant's available income in determining eligibility for the GA program. No reason is given, therefore, why the legislature might not lawfully require that income expended on such work-related items as uniforms, commuting expenses, and care of resident dependents during working hours must be included in its entirety for the purpose of determining GA eligibility. The Petitioner's burden is to establish that although such expenses might not be permitted to be deducted at all, a $25 ceiling on their deductibility offends the Constitution.

The Supreme Court in *Department of Public Welfare v. Molyneaux,* Pa. , 445 A.2d 730 (1982), has recently annunciated criteria for determining the constitutionality of this kind of legislation:

> In the field of social welfare, the standard for testing the validity of congressional enactments establishing statutory classifications was enunciated in Flemming v. Nestor, 363 U.S. 603, 611, . . . (1970). "Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program . . . , we must recognize that the Due Process Clause can be thought to interpose a bar only if the state manifests a patently arbitrary classification, utterly lacking in rational justification."

> It was summed up in Weinberger v. Salfi, 422 U.S. 749, 777, . . . (1974):

[T]he question raised is not whether a statutory provision precisely filters out those, and only those who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions. . . . Nor is the question wheth-

er the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than nonmembers. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule.

In *Dandridge v. Williams,* 397 U.S. 471, 486-487 (1970) the U.S. Supreme Court rejected an equal protection challenge to regulations of the State of Maryland creating a family benefit ceiling within the Aid to Families With Dependent Children program, writing:

the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 55 L.Ed. 369, 31 S.Ct. 337. It is enough that the State's action be rationally based and free from invidious discrimination. The regulation before us meets that test.

We do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social, and even philosophical problems presented by

public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration, Goldberg v. Kelly, 397 U.S. 254, 25 L.Ed. 2d 387, 90 S.Ct. 1011. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients. (Citations omitted.)

In sum,

If the goals sought are legitimate, and the classification adopted is rationally related to the achievement of those goals, then the action of [the legislature] is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment.

*Richardson v. Belcher,* 404 U.S. 78, 84 (1971).

The Commonwealth asserts that the legislative purposes to be served by the $25 ceiling on deductions is the prevention of fraud and the facilitation of the goal of greater administrative efficiency with respect to this welfare program. Such goals are clearly legitimate. *See Shapiro v. Thompson,* 394 U.S. 618, 633-634 (1969); *Weinberger v. Salfi,* 422 U.S. 749 (1975).

Indeed, the substitution of standardized benefit calculations in the form of "flat grants," for itemized and individualized calculations has been, in recent years, the obvious trend in welfare program administration in the Commonwealth.[2] Documentary evidence submitted by the Department establishes that the leg-

---

[2] The necessity and advisability of this trend is supported by two studies included in the evidence submitted by the Department. *See* "A New Public Assistance Standard for Pennsylvania" by the Pennsylvania State University College of Human Development.

islature has expressed a continuing concern with welfare abuse and inefficiency and has been presented with information to the effect that itemized grant applications which must be scrutinized and verified on an individual basis by caseworkers are a cause of such evils. The Petitioner does not quarrel with the Department's contention that the $25 work expense deduction ceiling will have the effect of preventing fraud with respect to the amount of such deductions and will facilitate administrative efficiency by decreasing the need for caseworker recalculation and verification.

The Petitioner's principal contention is that not only must the $25 ceiling bear a rational relationship to the legitimate state goals discussed above but that the amount permitted to be deducted (here $25) must also bear a close relationship to the amount actually expended by employed GA recipients in the earning of income. No authority is cited for the latter proposition. We conclude that the legislature, having determined to permit the deduction of some work-related expenses (although it could validly have prohibited any deduction from available income), need not permit the deduction of all such expenses. Moreover, on this issue, the Department has submitted substantial evidence to support the conclusion that the major work-related expense, transportation, averages for

Similarly, a 1975 Study commissioned by the Pennsylvania State Senate and conducted by the Pennsylvania Economy League contained the following recommendation:

That the Department continue its action to examine the feasibility and applicability of substituting a system of uniform flat grant awards for the present budget-component system, utilizing the recent study prepared for it by the College of Human Development of Pennsylvania State University, and taking into account current experience and experimentation of other states and the requirements and restrictions set forth by the Federal government and by recent court decisions.

each welfare recipient about $78 and that this amount closely approximates the total of the financial incentives provided to employed recipients by the regulations governing the GA program.[3]

Order affirmed.

ORDER

AND Now, this 18th day of October, 1982, the order of the Department of Public Welfare dated May 6, 1981 is affirmed.

---

[3] The figure alluded to is $75, the sum of the $25 deduction plus the $20 and $30 "disregards" contained in the penultimate sentence of 62 P.S. §432.12(a).

---

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent.

While I agree that the prevention of fraud and the reduction of administrative inefficiency will lead to cost savings and are admirable goals of the Department, I do not believe that financial expediency alone justifies the exclusion of this petitioner from receiving General Assistance benefits. *See Foster I.*[1] Furthermore, by *totally* disallowing any consideration *whatsoever* of this individual's work related expenses, the stated purpose of the Public Welfare Code,[2] is actually frustrated.

Section 401 of the Public Welfare Code provides that

. . . assistance shall be administered promptly and *humanely* with due regard for the preservation of family life . . . and in such a manner as to encourage self respect, *self-dependency* and the desire to be a good citizen and *useful to society.* (Emphasis added.)

---

[1] *Foster v. Department of Public Welfare,* 47 Pa. Commonwealth Ct. 441, 408 A.2d 216 (1979).

[2] Act of June 13, 1967, P.L.     , *as amended,* 62 P.S. §401.

Not only does the so-called "flat grant" system raise serious questions as to whether or not the assistance is administered "humanely" and with "due regard to the preservation of family life," but, if individual determination is to be *totally* precluded, then this system does *not* "encourage self-respect, self-dependency and the desire to be a good citizen who is useful to society."

The Department of Public Welfare suggests that Mr. Foster retire and that he care for his wife personally, in which case he will "receive a monthly check (Social Security) which will give him *more* disposable cash than he currently obtains by working and receiving welfare. The Department also states that "we believe that Herman and Minnie Foster will be no worse off if Herman Foster retires than they are now." This attitude, thus reflected, I believe, is totally incompatible with the stated purposes of the law.

A departmental decision which forces retirement, and eventual total dependence on various assistance programs, on a person who is able and willing to be self-dependent and useful to society should not be affirmed.

In 1977, this family was self-dependent except for the $191 per month which they received from General Assistance. Now, however, they will *not* be self dependent, will not contribute in a useful manner to society, and will be *totally* dependent on various governmental programs for assistance. Such a result is clearly contrary to the stated purpose of the Code, and does not benefit the Department, the Fosters, or the taxpayers.

Moreover, the *complete* lack of *any* opportunity for the departmental determination of individual needs seems to me to discourage rather than to encourage important interests which the legislature has deemed to be the basis of the Public Welfare Law. While there may be no doubt that rigidly following the "flat

grant'' system is always cheaper and easier than individualized determination, the Supreme Court of the United States has pointed out that where the procedure forecloses the determination of the crucial issues, it needlessly risks running roughshod over the important interests of the litigants, and therefore cannot stand. *See Stanley v. Illinois.*[3]

I believe that a method of computing assistance needs which forecloses the determination of crucial issues, is contrary to the purpose of the Public Welfare Code and that the determination here appealed should be reversed.

---

[3] In *Stanley v. Illinois,* 405 U.S. 645 (1972), the Court struck down the rebuttable presumption that unmarried fathers were unfit to care for their children, reasoning that speed, efficiency, and administrative convenience do not always outweigh the need for individual determination.