**Lilyan M. PRINCE, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 25, 2003.

Decided Sept. 23, 2003.

See also 42 Pa.Cmwlth. 616, 401 A.2d 594.

---

Eugene Orlando, Reading, for petitioner.

Kelly K. Smith, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Lilyan M. Prince (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) that denied her claim for unemployment benefits. In doing so, the Board affirmed the decision of the Unemployment Compensation Referee (Referee) that Claimant was ineligible for benefits because she was employed by her son. We affirm.

The facts in this matter are not in dispute. Claimant was employed by Prince and Prince, a law firm wholly owned by her son, Paul A. Prince, Esq. Claimant was employed part-time as the law firm's librarian, and after technology rendered the paper library obsolete, she became a part-time receptionist and clerk. She held this position until August 16, 2002, when she was terminated.

Upon her termination, Claimant applied for unemployment benefits. On September 26, 2002, the Scranton Unemployment Compensation Center determined that she was ineligible under Section 4($l$)(4)(5) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess, P.L. (1937) 2897, *as amended,* 43 P.S. § 753(1)(4)(5)(Law), provides that "employment" shall not include:

> Service performed by an individual in the employ of his son, daughter, or spouse, and service performed by a child under the age of eighteen (18) in the employ of his father or mother.

The Board affirmed the decision of the Referee, and Claimant now petitions for this Court's review.[1]

Claimant raises one issue in her appeal. She challenges the constitutionality of Section 4(l)(4)(5) of the Law, arguing that there is no rational reason to exclude workers employed by their children from eligibility for unemployment compensation benefits.

The constitutionality of Section 4(l)(4)(5) of the Law was considered and affirmed by this Court in *Bievenour v. Unemployment Compensation Board of Review*, 42 Pa. Cmwlth. 616, 401 A.2d 594 (1979). In *Bievenour*, this Court held that "the objective of the classification which excludes parents of employers is rationally related to a legitimate state interest.... [T]he computation of benefits without a formal arrangement, combined with the great potential for fraudulent abuse, presents obvious problems." *Id.* at 595. We also noted that

> [a] state has a legitimate interest in maintaining a self-supporting compensation program. Similarly, it does have a significant, if not cardinal concern, for the distribution of available resources in such a way as to maintain benefit payments at an adequate coverage level whereas coverage of a wider class of unemployed persons inadequately is obviously undesirable.

*Id.* Claimant is aware of our holding in *Bievenour*, but she seeks its reversal. *Bievenour* is binding precedent, and after reviewing developments in this area of the

law since 1979, we remain convinced of the continued viability of *Bievenour*.

The Pennsylvania Supreme Court has specifically considered the appropriate test to apply to a constitutional challenge to "unemployment compensation laws which include non-suspect or sensitive classifications." *Martin v. Unemployment Compensation Board of Review*, 502 Pa. 282, 296, 466 A.2d 107, 114 (1983).[2] A classification used in a statutory scheme for distributing economic benefits is entitled to deference, and it will not be found unconstitutional merely because it "is not made with mathematical nicety or because in practice it results in some inequality." *Id.* at 291, 466 A.2d at 111 (quotations omitted). Further,

> [u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. In short, *the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines;* in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.

*Id.* at 293, 466 A.2d at 112 (citations omitted)(emphasis added). In sum, *Martin* requires application of the rational relationship test to Section 4(l)(4)(5) of the Law.[3]

---

1. This Court's scope of review is limited to a determination of whether constitutional rights were violated, errors of law were committed, or essential facts are not supported by substantial evidence. *Wivell v. Unemployment Compensation Board of Review*, 673 A.2d 439, 441 (Pa.Cmwlth.1996).

2. Claimant concedes this is the appropriate test.

3. The analysis of the constitutionality of Section 4(l)(4)(5) of the Law is the same under both the United States and Pennsylvania Con-

Family relationships are not suspect classifications.

■ Even under the rational relationship test,[4] statutory classifications can be set aside as a violation of equal protection. Claimant directs our attention to *Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265 (1995). In *Curtis,* our Supreme Court considered a statute that required divorced or separated parents to provide support to their adult children for post secondary education. Married parents, in contrast, were not compelled by any statute to provide this educational support. The Court found the statute unconstitutional, holding as follows:

> Ultimately, we can conceive of no rational reason why those similarly situated with respect to needing funds for college education, should be treated unequally. Accordingly, we agree with the common pleas court and conclude that Act 62 is unconstitutional.

*Id.* at 260, 666 A.2d at 270. Claimant's reliance on *Curtis* is misplaced.

First, the statute under challenge in *Curtis* related to domestic relations and not to regulation of economic activity. As such, it was not entitled to the high degree of deference required by *Martin,* 502 Pa. at 293, 466 A.2d at 112.

Second, *Curtis* considered a type of classification that treated similarly situated persons differently. In *Curtis,* the Supreme Court could find no conceivable basis for treating "similarly situated young adults, *i.e.,* those in need of financial assistance" differently. *Id.* at 260, 666 A.2d at 270. The statute divided cash-strapped students into groups according to the marital status of their parents. Here, Section 4(*l*)(4)(5) of the Law treats all persons employed by their sons, daughters and spouses alike. Further, the "conceivable basis" for treating persons employed by their children differently from persons employed by their cousins or ex-spouses has been articulated by this Court in *Bievenour*.

In short, *Curtis* is distinguishable. It does not provide the authority needed to set aside a statute presumed constitutional unless it clearly, palpably and plainly violates the U.S. or Pennsylvania Constitution. *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 175, 507 A.2d 323, 331–332 (1986).

■ Claimant argues that the classification is wrong because it does not support family values or encourage family harmony. However, "the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. Such action by a legislature is presumed to be valid." *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 489, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977) (quotations and citations omitted). Further, as our Supreme Court has held, "such legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Martin,* 502 Pa. at 294, 466 A.2d at 113. This is a heavy burden, and Claimant has not carried it. As we held in *Bievenour,*

---

stitutions. *Chem v. Horn,* 725 A.2d 226, 228 (Pa.Cmwlth.1999).

**4.** In applying the rational basis test, Pennsylvania has adopted a two-step analysis. First, the courts must determine whether the challenged statute seeks to promote any legitimate state interest or public value. Second, if so, the classification must be reasonably related to accomplishing the articulated state interest. *Curtis v. Kline,* 542 Pa. 249, 257, 666 A.2d 265, 269 (1995). Claimant concedes the classification in question promotes a legitimate state interest.

"the classification which excludes parents of employers is rationally related to a legitimate state interest." *Id.* at 595. Those interests include prevention of fraud and the establishment of financially sound programs.

Finally, Claimant challenges the reasoning in *Bievenour,* noting that in *Wallace v. Unemployment Compensation Board of Review,* 38 Pa.Cmwlth. 342, 393 A.2d 43 (Pa.Cmwlth.1978), this Court rejected the concept that because certain types of claims for unemployment compensation benefits could be easily fabricated, they must be denied in order to prevent fraud.[5] *Wallace* is inapposite. The relevant inquiry is not whether Claimant herself has engaged in any fraud with regard to her claim for unemployment compensation benefits. Rather, the question is whether a statutory classification, designed, *inter alia,* to prevent fraud, will survive an equal protection challenge. As this Court explained in *Foster v. Department of Public Welfare,* 69 Pa.Cmwlth. 383, 452 A.2d 569 (1982):

> The question raised is not whether a statutory provision precisely filters out those, and only those who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions.... Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than nonmembers. *The question is whether Congress,* its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, *could rationally have concluded both that a particular limitation or qualification would protect against its*

occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule.

*Id.* at 571–572 (emphasis added) (quotations omitted).

Because Claimant has not carried her heavy burden of proving that Section 4(*l*)(4)(5) of the Law is unconstitutional, the Board properly relied upon its mandate to deny her benefits. Accordingly, the Board's adjudication is affirmed.

### ORDER

AND NOW, this 23rd day of September, 2003, the order of the Unemployment Compensation Board of Review dated February 20, 2003, in the above-captioned matter is hereby affirmed.

---

5. Further, the *Bievenour* Court had the benefit of the Court's reasoning and decision in *Wallace,* but it was not, apparently, deemed relevant. We agree.