555 A.2d 1216

**Richard B. KLEIN, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, STATE EMPLOYEES' RETIREMENT SYSTEM, Appellee.**

**Francis J. CATANIA, et al.,**

v.

**COMMONWEALTH of Pennsylvania, STATE EMPLOYEES' RETIREMENT BOARD and Robert L. Cusma, in his capacity as Secretary of the State Employees' Retirement System and R. Budd Dwyer, in his capacity as Treasurer of the Commonwealth of Pennsylvania.**

**Appeal of Richard B. KLEIN.**

Supreme Court of Pennsylvania.

Submitted April 11, 1988.

Decided March 3, 1989.

Reargument Granted May 9, 1989.

Henry T. Reath, Judith N. Renzulli, for appellant.

Richard B. Klein, pro se.

LeRoy S. Zimmerman, Atty. Gen., Susan J. Forney, John G. Knorr, III, Senior Deputy Attys. Gen., Andrew S. Gordon, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT *

LARSEN, Justice.

Although it arises from complex legislation and protracted litigation, the principal issue raised in this appeal is really quite simple: may the legislature compensate judges of the same class/level of court (in this case, at the Common Pleas bench) who perform the same functions and duties at different rates of compensation based solely on the dates on which they began their respective terms of office. We hold that such different rates of compensation for judges creates unequal, arbitrary and unreasonable classifications of judges within the same class/level which violate the equal protection provisions of the Constitution of the Commonwealth of Pennsylvania, and are in conflict with the constitutional mandate to have a *unified* judicial system in this Commonwealth.

* This opinion was held pending argument and disposition of *Goodheart v. Casey,* 521 Pa. 316, 555 A.2d 1210 (1989).

## I. *Facts and Procedural History*

This case is the latest in a series of cases challenging legislative amendments to the State Employees' Retirement Code of 1959, Act of June 1, 1959, P.L. 392, as amended, formerly 71 P.S. §§ 1725–101—1725–809.[1] For purposes of this appeal, we need only highlight the critical differences between the retirement benefits provided under the Retirement Code of 1959 and its repealer, the State Employees' Retirement Code of 1974, Act of March 1, 1974, P.L. 125, No. 31, as amended, 71 Pa.C.S.A. §§ 5101–5956, and we will not reiterate the exact operations of the two Codes (of 1959 and 1974) which have been explained at length in previous decisions of this Court. (For a full explication of the mechanics of operation and explanation of the differences between the two Codes, *see McKenna v. Commonwealth State Employees' Retirement Board (SERB)*, 495 Pa. 324, 433 A.2d 871 (1981) *and Catania v. SERB*, 498 Pa. 684, 450 A.2d 1342 (1982).)

For our purposes, suffice it to say that the retirement benefits available to judges are vastly disparate, depending upon whether the respective judge took office before or after March 1, 1974, the effective date (with certain non-relevant exceptions) of the State Employees' Retirement Code of 1974. Those who took office prior to that date are eligible to elect the optional Class E–1 status and an optional SSI (Social Security Integration) retirement plan. A judge electing the optional plans (as almost all eligible judges have done) is required to contribute a larger portion of his or her salary than "regular" Class A state employees, and in return receives substantially higher benefits upon retirement. Those judges who took office after March 1, 1974, contribute to the retirement fund at the same rate as

1. *See, e.g., McKenna v. Commonwealth State Employees' Retirement Board (SERB)*, 495 Pa. 324, 433 A.2d 871 (1981); *Catania v. SERB*, 498 Pa. 684, 450 A.2d 1342 (1982); *Catania v. SERB*, 71 Pa.Cmwlth. 393, 455 A.2d 1250 (1983); *Association of Pennsylvania State College and University Faculties v. State System of Higher Education*, 505 Pa. 369, 479 A.2d 962 (1984).

all Class A employees [2] and can no longer elect the optional plans providing for additional member contributions with commensurate additional retirement benefits.

To illustrate the significant disparity between the benefits available to judges who took office before and after March 1, 1974, consider the following hypothetical situation.[3] Common Pleas Judge "X" is a male who took office in January, 1974, elected the optional retirement plans and retired after twenty years of service at age sixty with a final average salary of $80,000 (the current salary for common pleas judges who are not president or administrative judges [4]). Upon retirement, Judge "X" would be eligible to receive a maximum annual pension benefit of $66,-566.00, and his benefits would have a "present value" under the optional retirement packages of $827,549.00.

By contrast, hypothetical Common Pleas Judge "Y" is a male who took office immediately after the effective date of the State Employees' Retirement Code of 1974 and retired at the age of sixty after twenty years of service at a final average salary of $80,000. Since Judge "Y" would be unable to increase his contributions under the optional Class E–1 plan and SSI supplemental plan, he would be eligible to receive a maximum annual pension benefit of $32,000.00, and his benefits would have a "present value" of $397,-824.00.

**2.** In 1983, the State Employees' Retirement Code was further amended to require an additional one and one-quarter percent (1¼%) of an employee's wages be contributed to the System's Retirement Fund with no increase in the employee's retirement benefits. 71 Pa.C.S.A. § 5505.1, *Additional member contributions.* In *Association of Pennsylvania State College and University Faculties v. State System of Higher Education,* 505 Pa. 369, 479 A.2d 962 (1984), this Court struck down this 1983 amendment as an unconstitutional unilateral impairment of contracts as applied to both employees whose retirement rights had vested prior to its enactment and to employees who were members of the system but whose retirement rights had not yet vested.

**3.** This illustration is based upon an affidavit prepared by the Retirement Counselor for the Administrative Office of Pennsylvania Courts in the case of *Goodheart v. Casey,* 521 Pa. 316, 555 A.2d 1210 (1989), which raises the same issues we address today in parts IIA and B.

**4.** Act of September 30, 1983, P.L. 160, No. 39, as amended, 65 P.S. § 366.2(d) (Purdon's supp. 1988).

Thus, Judge "Y" 's annual pension benefit would be $34,-566.00 less than that of Judge "X", and the "present value" of his retirement benefits would be $429,725.00 less.[5] There is, further, a net difference in the amount of pension benefits less pension contributions as the Commonwealth's contributions to the pension accounts of pre–1974 judges are more than double the Commonwealth's contributions of post–1974 judges.

The instant case involves the appeal of the Honorable Richard B. Klein, judge of the Court of Common Pleas of Philadelphia County. The facts are not in dispute, and will be recounted from the Commonwealth Court's opinion, per Judge Francis Barry for an *en banc* court:

> Richard B. Klein (claimant) appeals an order of the State Employees' Retirement Board (Board) denying his request for reinstatement to class E–1 status under the State Employees' Retirement Code of 1959 . . . .
>
> The facts are undisputed. Claimant first became a member of the State Employees' Retirement System (system) on May 4, 1967, when he accepted a position as special assistant attorney general. On December 30, 1971, he was appointed judge for the Court of Common Pleas of Philadelphia County and, thus, became eligible for class E–1 status under the 1959 Code. When this appointment expired on January 6, 1974, claimant elected to withdraw his accumulated deductions effective February 26, 1974. On January 5, 1976, following a successful election, claimant began serving a new term as common pleas judge. On January 7, 1976, he requested reinstatement to the class E–1 status he had held during his first term as judge. Claimant was given credit for all his years of prior service and he was permitted to repay the contributions he had previously withdrawn. However, his request for reinstatement to class E–1 status was

5. Additionally, a judge who entered service after the 1983 amendments took effect would also be entitled to the same pension benefits as a judge who entered service between March 1, 1974 and July 22, 1983, but would had to have contributed an additional one and one-quarter percent of his or her salary. *See* note 2, *supra.*

denied on grounds that such reinstatement is prohibited by the 1974 Code. The Board affirmed this determination and the present appeal followed.

*Klein v. SERB,* 108 Pa.Cmwlth. 39, 40–41, 528 A.2d 1071, 1071–72 (1987).

On appeal to Commonwealth Court, Judge Klein argued that the Board's refusal to allow him to reenter the retirement system as a Class E–1 contributor denied him a right to which he would have been entitled under the Code of 1959 (i.e., the right to withdraw from service and gain reentry under the same Class E–1 status) and so was an unconstitutional impairment of his contractual rights. Additionally, he argued that the Board's refusal to grant him Class E–1 status is in direct violation of the consent decree entered into on behalf of himself and all other class members and the Board in *Catania v. SERB,* 71 Pa.Cmwlth. 393, 455 A.2d 1250 (1983) (on remand from this Court at 498 Pa. 684, 450 A.2d 1342 (1982)). The Commonwealth Court rejected these contentions and affirmed the Board's determination. *Klein v. SERB,* 108 Pa.Cmwlth. at 45, 528 A.2d at 1074.

Judge Klein also filed a separate petition for enforcement of the *Catania* consent decree to the Commonwealth Court's original jurisdiction, raising the same issues which he raised in the appeal to that Court. The Commonwealth Court sustained the Board's preliminary objections to this petition for the reasons set forth in its opinion on the appeal from the Board's determination. *Catania v. SERB (Appeal of Klein),* 108 Pa.Cmwlth. 46, 528 A.2d 1074 (1987).

Judge Klein has filed this direct appeal as of right from the original action in Commonwealth Court at No. 101 C.D.1981 sustaining the Board's preliminary objections to his petition for enforcement. 42 Pa.C.S.A. § 723(a). We granted allocatur to hear the appeal from the Commonwealth Court's order at No. 2374 affirming the Board's determination refusing to allow appellant to reenter the retirement system as a Class E–1 member. 42 Pa.C.S.A.

§ 724. We now reverse both orders of the Commonwealth Court.

## II. *Legal Discussion*

### A. Unified Judicial System

■ On April 23, 1968, the Pennsylvania Constitution was adopted by the electorate which promulgated a new Judiciary Article V. Section 1 of Article V established the *unified judicial system* of this Commonwealth:

**Unified judicial system**

The judicial power of the Commonwealth shall be vested *in a unified judicial system* consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system. (emphasis added)

Section 16(a) of Article V provides that "Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth." Unlike its predecessors, section 16 did not provide that judicial officers shall receive "adequate compensation." However, this Court has held that the Constitution of 1968 requires that the legislature "provide compensation *adequate in amount and commensurate with the duties and responsibilities of the judges involved.* To do any less violates the very framework of our constitutional form of government." *Glancey v. Casey,* 447 Pa. 77, 86, 288 A.2d 812, 816 (1972) (emphasis added).

It is apparent that the Constitution of 1968 does not establish or contemplate different rates of compensation for justices, judges and justices of the peace performing similar duties and responsibilities. It is also clear that retirement benefits are not mere gratuities, but are part of the total

compensation package, albeit deferred compensation. *Wright v. Retirement Board of Allegheny County*, 390 Pa. 75, 134 A.2d 231 (1957). The question presented, therefore, is whether the legislature may, consistent with the constitutional mandate for a *unified* judicial system, provide disparate retirement compensation benefits for judges of the same level/court performing the same duties and exercising the same authority. Mindful that legislative enactments are presumed constitutional and will not be declared unconstitutional unless plainly and palpably in violation of the constitution, *Commonwealth v. Buckley*, 510 Pa. 326, 329, 508 A.2d 281, 282 (1986), we are constrained nevertheless to find the vastly disparate two-tiered retirement compensation system completely at-odds with and repugnant to a *unified* judicial system and inimical to the goals and purposes sought to be achieved thereby.[6]

Quite recently, this Court had occasion to give meaning to the people's mandate for a "unified judicial system." In *Allegheny County v. Commonwealth*, 517 Pa. 65, 534 A.2d 760 (1987), this Court was asked to decide, inter alia, whether a legislative funding scheme requiring the various counties to fund their respective common pleas courts was

**6.** Although appellant has not specifically challenged the two-tiered retirement benefits system on this ground, we have recognized that the failure to preserve an issue for appeal may be excused when a strong public interest outweighs the need to protect the judicial system from improperly preserved issues. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 224, 489 A.2d 1291, 1301 (1985), *citing Commonwealth v. McKenna*, 476 Pa. 428, 383 A.2d 174 (1978). The public interest in the instant case requires us to address this obvious constitutional infirmity created by legislation which threatens the unity and harmony of the unified judicial system. As we stated in *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 53, 274 A.2d 193, 197 (1971), the "genius of our tripartite Government is based upon the proper exercise of their respective powers together with harmonious cooperation" among the three co-equal and independent branches, but "if this cooperation breaks down, the Judiciary must exercise its inherent power to preserve the efficient and expeditious administration of Justice and protect it from being impaired or destroyed." *See also Catania v. SERB*, 498 Pa. 684, 450 A.2d 1342 (1982) (Supreme Court accepts plenary jurisdiction to determine constitutionality of Retirement Code of 1974 as applied to judges who had entered retirement system prior to its effective date).

unconstitutional as conflicting with the mandate of Article V, section 1.

In *Allegheny County,* we held that required funding by the counties bred antagonism and disharmony between court management and labor personnel which, rather than unifying the judicial system of the Commonwealth, fragmented it. We further stated:

Our interpretation of the concept "unified judicial system" depends, as does virtually all constitutional construction, not only upon a literal meaning of words, but also upon an awareness of the legal and constitutional implications of those words. In addition to the concerns already discussed, two additional matters should be mentioned.

First, the employment of staff. The purpose of a unified judicial system is to provide evenhanded, unbiased and competent administration of justice. The expectation is that cases will be processed as well in one county as another. In order to meet this expectation, however, judicial resources and staffing must be proportionately similar in all judicial districts. There must be uniform hiring practices and standards, and judges must be free to hire competent staff, not merely those referred by local political figures. If the staffing of court-related positions is treated as an opportunity to repay political debts rather than as an opportunity to serve the public by hiring qualified people who are able to make the system work efficaciously, the system will be neither evenhanded nor competent.

A second matter is the public's perception of the judicial system. The citizens of this Commonwealth have a right not only to expect neutrality and fairness in the adjudication of legal cases, but also, they have a right to be absolutely certain this neutrality and fairness will actually be applied in every case. But if court funding is permitted to continue in the hands of local political authorities it is likely to produce nothing but suspicion or perception of bias and favoritism. As the framers of our

340

constitution recognized, a unified system of jurisprudence cannot tolerate such uncertainties. All courts must be free and independent from the occasion of political influence and no court should even be perceived to be biased in favor of local political authorities who pay the bills.

For the foregoing reasons we hold that the statutory scheme for county funding of the judicial system is in conflict with the intent clearly expressed in the constitution that the judicial system be unified. The order of Commonwealth Court is vacated and judgment is entered for the County.

517 Pa. at 75–6, 534 A.2d at 764–65.

Just as, under a *unified judicial system*, "judicial resources and staffing must be proportionately similar in all judicial districts" and there must be "uniform hiring practices and standards," so too the *unified judicial system* requires that all justices, judges and district justices of a single level/court performing similar functions and exercising similar authority be paid at the *same rate of compensation*. Creation of classes of judges within a single level/court, such as the Courts of Common Pleas to receive disparate compensation for similar functions is inequitable and potentially devisive of the harmony and unity sought to be fostered by unification of the judicial system of this Commonwealth. Moreover, the public's perception of a court or courts made up of "first class" and "second class" judges erodes public confidence in the independence and integrity of the judiciary.

Surely the unified judicial system of our Constitution would not tolerate the payment of one salary to Common Pleas judges who took office before March 1, 1974 and another salary to Common Pleas judges who took office after that date. Likewise, the Constitution does not tolerate the payment of disparate deferred compensation benefits to common pleas judges performing the same duties and responsibilities depending solely on their respective dates of assuming office.

In 1903, our General Assembly passed an Act fixing and increasing the salaries of the judges and justices of the various courts of this Commonwealth. The state treasurer had refused to pay the increased salaries to judges who had been in office at the time the Act was passed on April 14, 1903 (P.L. 175), arguing that the salaries of judges could not be increased under then-in-effect Article III, section 13 of the Constitution of 1874 which provided that "no law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." In *Commonwealth ex rel. Carson v. Mathues*, 210 Pa. 372, 59 A. 961 (1904), this Court held that Article 3, section 13 did not prohibit the increase from taking effect as to all members of the judiciary regardless of whether they took office before or after the effective date of the Act of 1903. In fact, we held that this provision of the Constitution was clearly overridden by relevant provisions of the Judiciary article and by the inherent authority and structure of the courts.

Speaking for this Court, Justice Thompson stated:

The question raised in this appeal is whether the [Act of 1903] ... applies to all judges then in commission or only to those thereafter to be commissioned. *If it be applicable to the latter only then judges upon the same bench engaged in the performance of exactly the same judicial functions would receive different compensation,* those senior in commission smaller and those junior larger compensations. *A condition so anomalous, so inequitable and so clearly repugnant to every principle underlying judicial compensation, should not be tolerated unless it be the unavoidable result of a clear and plain mandate of the constitution, and such only should be its warrant.*

The constitution creates three co-ordinate branches of government; the legislative, the executive and the judicial, and with a view to the highest and best results for common welfare, clothes them with independent and complete powers. The people having in them inherent all

power, have in their fundamental law carved out of it distinctive powers for these respective co-ordinate departments of government and making each one exclusive and independent within its province of action, have given to it those elements of power necessarily incident to it and no more. Each therefore has its well-defined limitations and *the preservation of such exact limitations will necessarily best conserve the harmony of the whole.*

\* \* \* \* \* \*

[I]n case of antagonism between the section in question [Article III, section 13] and the judiciary article, resulting in a contest for supremacy, the article must prevail in such contest because it creates a co-ordinate branch of government, and no mere limitation of legislative powers contained in another part of the constitution and relating to a different branch of government can be permitted to become a weapon to be used to rip up the very vitals of the co-ordinate branch so created and become destructive of that which is essential to its existence.

\* \* \* \* \* \*

By that act the legislature under the mandate to determine adequacy of compensation, has declared that the salaries therein provided for are adequate for the judges of the different courts. *There can be but one adequate compensation for each of the judges of the same court because no matter how much greater the experience or learning of one member of it may be than that of another, there can be no difference in the actual performance of the judicial functions.* The judicial genius who brings the highest order of learning and ability to bear in such performance, stands upon the same level with the merest tyro of a judge, whose learning and ability in comparison may be as the shadow is to the substance. *It is futile to contend that there may be different adequate compensations for different members of the same court.*

210 Pa. at 422–27, 59 A. 961 (emphasis added).

The supporting opinion of trial Judge (later Justice) von Moschzisker of the Court of Common Pleas of Philadelphia

County also made some cogent observations relevant to our decision today. Article V, section 26 of the Constitution then-in-effect provided: "All laws relating to courts shall be general and of uniform operation, and the organization, jurisdiction and powers of all courts of the same class or grade ... shall be uniform...." Construing the "uniform operation" clause to prohibit the establishment of a two-tiered salary structure for judges of a particular level or court, Judge von Moschzisker stated:

What is meant by the words *"uniform operation"* as used in this section of the constitution? Again we refer to Anderson's Law Dictionary, which states: "The operation of a law means its practical working and effect;" and "that all law of a general nature shall be 'uniform in their operation'. means that *such laws shall bear equally, in their burdens and benefits, upon persons standing in the same category,"* Again, "Every law of a general nature must operate equally upon all persons brought within the relations and circumstances provided for." Again, *"A law is uniform when all persons brought within the relation and circumstances provided for are affected alike, when it has a uniform operation upon all within the class upon which it purports to operate."*

"We are not at liberty to presume that the framers of the constitution, or the people who adopted it, did not understand the force (of) language:" *People v. Purdy*, 2 Hill (New York), 31.

It would seem from this analysis, that the provision of the constitution to the effect that all laws relating to courts shall be general and of uniform operation, can well be held to require that *a law fixing the salaries of judges, and providing the method of payment, must not only be general in its terms, but must go further and operate uniformly upon all the judges at one and the same time, and it can well be presumed that the legislature had this in mind* when they passed the act of 1903....

*Id.* at 210 Pa. 408–09, 59 A. 961 (emphasis added).

■ A "unified judicial system" must *necessarily* contemplate "uniform operation" of the various courts, as *Allegheny County* explicitly held, and any law fixing salaries or other compensation for judges must operate uniformly upon all members of the same bench/court performing the same functions.[7] "There can be but one adequate compensation for each of the judges of the same court because ... there can be no difference in the actual performance of the judicial functions." *Mathues, supra* at 210 Pa. 427, 59 A. 961. We hold, therefore, that the two-tiered system of retirement benefits establishing radical disparities in the deferred compensation paid to the members of the two classes of judges (pre-March 1, 1974 and post-March 1, 1974) is unconstitutional as inimical to and destructive of the "unified judicial system" mandated by Article V, section 1 of the Pennsylvania Constitution.

## B. *Equal Protection*

■ Additionally, the classifications created by the two-tiered retirement compensation scheme creating unequal classes of judges based solely upon their date of entry into the system are arbitrary, unreasonable and unconstitutional under the equal protection provisions of the Pennsylvania Constitution, Article III, section 32 [8] and Article I, section

7. The current salary provisions in our statutes, enacted by the Public Official Compensation Law, Act of September 30, 1983, P.L. 160, No. 39, § 2, 65 P.S. § 366.2, provides for uniform salaries for the various judicial officers of the unified judicial system, with additional increments being paid to the Chief Justice of this Court and to the President Judges and Administrative Judges of the Superior, Commonwealth, Common Pleas and other courts. We see no constitutional infirmity with these slightly higher incremental salaries being paid to the Chief Justice, the President and the Administrative Judges of the various courts, as the increments merely recognize that these members of the Judiciary perform unique administrative functions and duties within their respective benches/courts. Because the additional increments are intended to somewhat compensate for the additional duties of the administrative heads of the various courts, they create reasonable classifications which do not threaten or impair the unified judicial system.

8. Article III § 32 provides in relevant part that:
   The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law ... Nor

1,[9] and Article I, section 26.[10]  In *Fischer v. Department of Public Welfare*, 509 Pa. 293, 502 A.2d 114 (1985), this Court reiterated this Commonwealth's standards for reviewing equal protection claims under either the state or federal constitutions, stating:

> [W]e are free to interpret our Constitution in a more generous manner than the federal courts; and in the past we have not been shy of utilizing this freedom to afford the citizens of this Commonwealth greater liberties than they would otherwise enjoy.
>
> ... However, at the same time we have often turned to federal constitutional analysis as an interpretational aid.

In *Kroger v. O'Hara Township*, 481 Pa. 101, 392 A.2d 266 (1978) this Court, in discussing the preferred manner in which we should analyze state equal protection claims stated:

> Although the view of the United States Supreme Court concerning proper guidelines for its interpretation of the federal constitution is not binding upon us in interpreting the Pennsylvania Constitution, we agree that we should be guided by the same principles in interpreting our Constitution.

*Id.*, 481 Pa. at 117, 392 A.2d at 274....

In the recent case of *James v. Southeastern Pennsylvania Transportation Authority*, 505 Pa. 137, 477 A.2d 1302 (1984), Mr. Justice Flaherty, writing for the Majority, described the analytical framework for reviewing government actions which affect disparate classes.

shall the General Assembly indirectly enact any special or local law by the partial repeal of a general law; ...

9. Article 1 § 1 provides:
   § 1.  Inherent rights of mankind
   All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

10. Article I, § 26 provides:
   Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

... [T]here are three different types of classifications calling for three different standards of judicial review. The first type classifications implicating neither suspect classes nor fundamental rights—will be sustained if it meets a "rational basis" test.... In the second type of cases, where a suspect classification has been made or a fundamental right has been burdened, another standard of review is applied: that of strict scrutiny.... Finally, in the third type of cases, if "important," though not fundamental rights are affected by the classification, or if "sensitive" classifications have been made, the United States Supreme Court has employed what may be called an intermediate standard of review, or a heightened standard of review.... There are, in summary, three standards of review applicable to an equal protection case, and the applicability of one rather than another will depend upon the type of right which is affected by the classification.

*Id.*, 505 Pa. at 145, 477 A.2d at 1306.

509 Pa. at 305–07, 502 A.2d at 120–21 (numerous citations omitted).

In the instant case, we find the interest or right affected by the classification at issue to be fundamental requiring strict scrutiny by this Court. As we have previously noted, our tripartite system requires the courts to recognize, and where appropriate, exercise their authority as a co-equal, independent branch of government to protect that independence from legislative usurpation. *Glancey v. Casey*, 447 Pa. 77, 86, 288 A.2d 812, 815 (1972); *Leahey v. Farrell*, 362 Pa. 52, 55–56, 66 A.2d 577 (1949). In *Commonwealth ex rel. Carroll v. Tate, supra* at 442 Pa. 57, 274 A.2d at 199, this Court stated:

Mr. Chief Justice Marshall said in *McCulloch v. Maryland*, 17 U.S. 316, 431 [4 L.Ed. 579 (1819) ] "... the power to tax involves the power to destroy; ..." A Legislature has the power of life and death over all the Courts and over the entire Judicial system. Unless the Legislature can be compelled by the Courts to provide the money

which is reasonably necessary for the proper functioning and administration of the Courts, our entire Judicial system could be extirpated, and the Legislature could make a mockery of our form of Government with its three co-equal branches—the Executive, the Legislative and the Judicial.

Because the classification at issue creates a disparity in deferred compensation benefits to be paid judges of the same bench/court of the unified judicial system based solely on date of entry into that system, even though the members of the two classes created perform the exact same functions and exercise the same authority, the legislation creating the classification infringes upon the independence and integrity of the judiciary, and must be deemed, therefore, to affect a fundamental right or interest.

Accordingly, to pass constitutional muster under the equal protection provisions of our Constitution, the classification (pre-March 1, 1974 judges vs. post-March 1, 1974 judges) created by the two-tiered retirement compensation system must be strictly scrutinized to determine if the classification has been narrowly tailored and is necessary to achieve a compelling state interest. We hold that such classification cannot survive such strict scrutiny; indeed, there is not even a rational basis for the arbitrary time-based classification, let alone compelling state interest.

The fiscal integrity and actuarial soundness of the retirement system are offered as the justification for the vastly disparate retirement compensation system which provides substantially lesser benefits to judges who have taken office after March 1, 1974 than to their predecessors who perform the exact same functions. This is, indeed, a valid and legitimate state interest, and the State Employees' Retirement Code of 1974 was enacted only after extensive study and consideration. *See, e.g.,* Appendix, to title 65 of Purdon's Pennsylvania Statutes Annotated supplement at 59–92. Nevertheless, the laudatory goals of fiscal integrity/actuarial soundness cannot be achieved at the expense of a group or class that has been arbitrarily singled-out to

bear the brunt of the legislation created to reach that goal. "[F]inancial expediency alone does not justify an invidious classification." *Foster v. Commonwealth Dept. of Public Welfare*, 47 Pa.Cmwlth. 441, 408 A.2d 216, 219 (1979). As Chief Justice Nix stated in *Association of Pennsylvania State College and University Faculties, supra* at 505 Pa. 377, 479 A.2d 962:

> Accepting the principle that the state's duty to maintain the fiscal integrity of the retirement fund through actuarial soundness is a valid basis for *some changes in a retirement system*, nevertheless, the state's unilateral reduction of retirement benefits arising from the employment contracts cannot pass constitutional muster and must fall.

> *Catania v. Commonwealth, State Employees' Retirement Board, supra*, 498 Pa. at 707–708, 450 A.2d at 1354 (Opinion of Nix, J., in Support of Grant of Summary Judgment, joined by Larsen, J.) (footnote omitted; emphasis in original).

Fiscal integrity of the fund might be achieved by providing that all judges whose surnames begin with the letters A–M will have Class E–1 status, and all those with the letters N–Z will have Class A status, but such a classification would obviously be arbitrary and unreasonable because it had no relationship whatsoever to the functions performed and authority exercised by the judges within the two classes. While a classification created by means of a cut-off date of March 1, 1974, with all those taking office before that date eligible for Class E–1 status and all those after that date eligible only for Class A status, may not be as apparently arbitrary, it is equally unrelated to functions performed and authority exercised by the judges within the classes, and is equally arbitrary and unreasonable. As Justice Thompson stated in *Mathues, supra*, there "can be one adequate compensation for each of the judges of the same court because no matter how much greater the experience or learning of one member of it may be than that of another, there can be no difference in the actual perform-

ance of the judicial functions.... It is futile to contend that there may be different adequate compensations for different members of the same court." 210 Pa. at 427, 59 A. 961. Elected public officials similarly situated cannot be paid different compensation when they perform the same functions and exercise the same authority.

Accordingly, we hold that the two-tiered retirement compensation classification created by the State Employees' Retirement Code of 1974 violates the equal protection provisions of the Pennsylvania Constitution, and is unconstitutional.

For the foregoing reasons, we reverse the Orders of the Commonwealth Court dated July 27, 1987 at No. 101 C.D. 1981 and No. 2374 C.D.1986, and we remand this case to the State Employees' Retirement Board for calculation of benefits consistent with this opinion and for calculation of appellant's contributions consistent with the manner of contributions ultimately arrived at in *Catania v. SERB*, 498 Pa. 684, 450 A.2d 1342 (1982).

NIX, C.J., files a concurring opinion in which

FLAHERTY and STOUT, JJ., join.

McDERMOTT, J., dissents.

NIX, Chief Justice, concurring.

The Opinion Announcing the Judgment of the Court has concluded that appellant is entitled to receive the same compensation received by his colleagues. I agree with this result, based on the reasoning in *Goodheart v. Casey*, 521 Pa. 316, 555 A.2d 1210 (1989). I write, however, to express my clear disagreement with the suggestion that this result can be supported under a constitutional Equal Protection analysis.

To sustain an Equal Protection challenge in a case such as this where a suspect class is clearly absent, one initially must identify a right which has been offended by a particular classification. Appellant and the Court fail to determine what right has been implicated here.

In *Goodheart*, where the constitutionality of the 1974 amendment to the Retirement Code was contested, we found that judges are entitled to adequate compensation commensurate with "their learning, experience, and the elevated position they occupy in modern society." *Id.*, 521 Pa. at 322, 555 A.2d 1213. The legislature is empowered to fix adequate compensation for judges at an amount which will not pose a genuine threat to the independence and proper functioning of the judiciary. *Id.*, 521 Pa. at 321, 555 A.2d 1212. Once the legislature has made that determination, all judges have a right to receive the established rate. *Id.*, 521 Pa. at 326–327, 555 A.2d 1216. *See also Commonwealth ex rel. Carson v. Mathues*, 210 Pa. 372, 59 A. 961 (1904). As *Goodheart* illustrated, when the legislature fixed the rate of compensation for judges prior to 1974, that rate presumptively established adequate compensation for appellant's office. *Goodheart*, 555 A.2d at 1215. It is on that basis that the Court in *Goodheart* sustained the claims of the judges therein. It is for that reason that I concur in the result in this appeal.

In an Equal Protection analysis, the issue is not a question of the adequacy of the compensation, but rather the legitimacy of the classification. The focus is therefore upon whether the classification is appropriate. The accepted test is whether or not there is a rational basis for that classification, *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981); *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 174–175, 101 S.Ct. 453, 459–460, 66 L.Ed.2d 368 (1980); *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979); *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976); *James v. Southeastern Pennsylvania Transportation Authority*, 505 Pa. 137, 145, 477 A.2d 1302, 1306 (1984), unless the classification affects a suspect group or impinges upon a fundamental right. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36

L.Ed.2d 16 (1973). Clearly, in this case the appropriate standard is rationality.

The right involved here is the right of employment. Specifically it concerns the compensation to be paid for that employment. From Biblical times, it has been recognized that a fair compensation for employment is based upon the amount agreed upon by the employer and the employee at the commencement of the employment relationship.[1] Matthew 20:1–16. In this instance, the rate of compensation was established when the judges in question sought election to the office. Clearly, their action is properly deemed to be an acceptance of the prevailing salary at the time they assumed the office. There is no suggestion, and it would be ludicrous to argue, that they were in any way coerced in making the judgment to seek the office. Therefore, there is no factual basis to support a deprivation that impinges upon a right. Mere dissatisfaction with one's compensation cannot be transformed into a constitutional challenge even though another employee may be receiving greater compensation for similar services.[2]

1. There is no issue of the lower paid group being used to threaten the job security of those who received the former higher remuneration. *See, e.g., Trans World Airlines, Inc. v. Independent Federation of Flight Attendants,* —— U.S. ——, 109 S.Ct. 1225, 103 L.Ed.2d 456 (1989) (at the time of the writing of this opinion, the decision in Trans World Airlines was still pending). Under our constitutional provision, the former judge's salary may not be diminished. Pa. Const. art. V, § 16(a). The only question here is whether the fiscal integrity of the retirement fund supplied a rational basis for an alteration of the compensation package. It is significant that in *Trans World Airlines, Inc. v. Independent Federation of Flight Attendants* there was no equal protection argument raised. This does not mean, however, that in such a case an equal protection argument could not be raised under the constitution of this Commonwealth. (We express no opinion as to the outcome of such an argument under our constitution.)

2. In *McKenna v. State Employees Retirement Board,* 495 Pa. 324, 433 A.2d 871 (1981), this writer noted that retirement benefits are "founded upon a contract theory of deferred compensation." *Id.,* 495 Pa. at 334, 433 A.2d at 876. *See also Catania v. State Employment Retirement Board,* 498 Pa. 684, 705–8, 450 A.2d 1342, 1345–1347 (1982), (Opinion in Support of the Grant of Summary Judgment) (joined by Mr. Justice Larsen), wherein we again recognized retirement benefits as part of the total compensation package, subject to the original contract of employment.

Implicitly recognizing the weakness of such a position, the opinion announcing the judgment of the Court attempts to frame the right implicated in this appeal as being the right of the people to an impartial and independent judiciary. While this right is obviously relevant in an adequacy argument, *see Goodheart, supra,* it has no place in an Equal Protection analysis. Moreover, this is not an action brought by the people of this Commonwealth to protect the integrity of the judiciary, but rather by the judges themselves who are dissatisfied with the compensation they are receiving.

Therefore, on the basis set forth in *Goodheart,* I would reverse the order of the Commonwealth Court affirming the decision of the State Employees' Retirement Board.

FLAHERTY and STOUT, JJ., join in this opinion.

## ORDER

PER CURIAM:

AND NOW, this 9th day of May 1989, the Application for Reargument is granted. The order granting reargument in *Bernard J. Goodheart, et al. v. The Honorable Robert P. Casey, Governor, Commonwealth of Pennsylvania,* No. 33 M.D. Appeal Docket 1988, 555 A.2d 1210 at 1216, is incorporated herein.

The Opinion Announcing the Judgment of the Court inappropriately relies on *McKenna, supra,* and *Catania, supra,* because the issue in those cases was the impairment of an existing contract for employment. Clearly they provide no support for a constitutional argument premised on equal protection.