**[J-65-2022] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| ALLEGHENY REPRODUCTIVE HEALTH CENTER, ALLENTOWN WOMEN'S CENTER, DELAWARE COUNTY WOMEN'S CENTER, PHILADELPHIA WOMEN'S CENTER, PLANNED PARENTHOOD KEYSTONE, PLANNED PARENTHOOD SOUTHEASTERN PENNSYLVANIA, AND PLANNED PARENTHOOD OF WESTERN PENNSYLVANIA,<br><br>   Appellants<br><br><br>   v.<br><br><br>PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES, VALERIE A. ARKOOSH, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES, ANDREW BARNES, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DEPUTY SECRETARY FOR THE PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES' OFFICE OF MEDICAL ASSISTANCE PROGRAMS, AND SALLY KOZAK, IN HER OFFICIAL CAPACITY AS DEPUTY SECRETARY FOR THE PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES' OFFICE OF MEDICAL ASSISTANCE PROGRAMS,<br><br>   Appellees | No. 26 MAP 2021<br><br>Appeal from the Orders of the Commonwealth Court at No. 26 MD 2019 dated January 28, 2020 and March 26, 2021.<br><br>ARGUED: October 26, 2022 |

**CONCURRING AND DISSENTING OPINION**

CHIEF JUSTICE TODD        DECIDED: January 29, 2024

I join sections I and II(A) of the majority opinion, which concludes that Appellants – providers of abortion services in the Commonwealth – have standing to pursue the instant litigation on their own behalf, and on behalf of patients who are eligible for medical assistance, but are denied coverage for sought-after abortion services pursuant to Section 3215(c)[1] and (j) (collectively, "Coverage Exclusion") of the Abortion Control Act, 18 Pa.C.S. § 3201-3220. I also join section II(B) of the majority opinion, which concludes that the Commonwealth Court erred in permitting various state legislators ("Intervenors") to intervene in this matter pursuant to Pennsylvania Rule of Civil Procedure 2327, based on Intervenors' assertion that a decision invalidating the Coverage Exclusion would affect their authority to appropriate government funds. However, despite the thoughtful and comprehensive exposition by my learned colleague, I dissent from the remainder of the majority opinion and its ultimate mandate, as I conclude that we are bound to follow our

---

[1] Section 3215(c) provides:

**(c) Public funds.--**No Commonwealth funds and no Federal funds which are appropriated by the Commonwealth shall be expended by any State or local government agency for the performance of abortion, except:

(1) When abortion is necessary to avert the death of the mother on certification by a physician. When such physician will perform the abortion or has a pecuniary or proprietary interest in the abortion there shall be a separate certification from a physician who has no such interest.

(2) When abortion is performed in the case of pregnancy caused by rape which, prior to the performance of the abortion, has been reported, together with the identity of the offender, if known, to a law enforcement agency having the requisite jurisdiction and has been personally reported by the victim.

(3) When abortion is performed in the case of pregnancy caused by incest which, prior to the performance of the abortion, has been personally reported by the victim to a law enforcement agency having the requisite jurisdiction, or, in the case of a minor, to the county child protective service agency and the other party to the incestuous act has been named in such report.

18 Pa.C.S. § 3215(c).

decision in *Fischer v. Department of Public Welfare*, 502 A.2d 114 (Pa. 1985), under the doctrine of *stare decisis*.

Preliminarily, I note that this case does not concern the right to an abortion. Rather, the issue before this Court is whether the Commonwealth, because it provides funds to indigent women who choose to give birth, is also required to provide funds to indigent women for the performance of an abortion when the abortion is not necessary to preserve the life of the mother, or where the pregnancy did not result from rape or incest.

Appellants contend that the Coverage Exclusion violates the Equal Rights Amendment of Art. I, § 28 of the Pennsylvania Constitution[2] because, *inter alia*, it treats women differently "on the basis of a physical condition peculiar to their sex." Appellants' Brief at 35. Appellants further maintain that the Coverage Exclusion violates the equal protection guarantees contained in Art. I, § 1; Art. I, § 26; and Art. III, § 32, of the Pennsylvania Constitution,[3] because it favors one fundamental right (the right to carry a

---

[2] Article I, Section 28 provides: "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Pa. Const. art. I, § 28.

[3] Article I, Section 1 provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1.

Article I, Section 26 provides: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of an any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. art. I, § 26.

Article III, Section 32 provides, in part: "The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law," and sets forth specific examples. Pa. Const. art. III, § 32.

As noted by the Majority, although Appellants identify three provisions that "collectively guarantee equal protection of the law and prohibit discrimination," *see* Majority Opinion at 167, their argument relative to Art. I, § 1 concerns the recognition of an inherent right to reproductive autonomy and not equal protection, and they fail to demonstrate that Art. (continued…)

pregnancy to term) over another (the right to terminate a pregnancy). Appellants' Brief at 69.

Central to this appeal, however, this Court addressed these identical issues more than forty years ago in our unanimous decision in *Fischer*. In *Fischer*, the appellants − who included, *inter alia*, several recipients of medical assistance who were pregnant and desired abortions, abortion providers, and an organization which counseled rape victims − challenged the coverage exclusion contained in the Abortion Control Act of 1982 (the "Act") on the basis that it violated Art. I, § 28, and the equal protection guarantees contained in Art. I, § 1, Art. I, § 26, and Art. III, § 32, of the Pennsylvania Constitution. As the majority observes, for present purposes, there is no "meaningful difference" between the language of Section 3215(c) as it appeared in 1982, and the current language of Section 3215(c). Majority Opinion at 56 n.32.[4]

We first considered their assertion that, because the Commonwealth provided funds to indigent women for childbirth, it was "equally obliged to fund an abortion," *Fischer*, 502 A.2d at 116, and we began by examining the relevant federal jurisprudence. We observed that the United States Supreme Court had acknowledged that states have a significant interest in protecting potential life, and may take certain steps to further that interest by encouraging childbirth. *Id.* at 118 (citing *Roe v. Wade*, 410 U.S. 113, 162 (1973)[5]; *Beal v. Doe*, 432 U.S. 438, 446 (1976)). We further noted that, in *Maher v. Roe*, 432 U.S. 464 (1970), the high Court held that there is "no constitutional requirement for a

---

III, § 32 applies herein. *See id.* at 177. Thus, Appellants' equal protection argument rises and falls on Art. I, § 26.

[4] For this reason, I refer to "Coverage Exclusion" when discussing the Abortion Control Act of 1982 and the current version of the Abortion Control Act.

[5] As discussed by the majority, and below, in *Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (2022), the United States Supreme Court overruled *Roe*, and held that the federal constitution does not confer a right to abortion.

state to 'accord equal treatment to both abortion and childbirth,'" *Fischer*, 502 A.2d at 118 (quoting *Maher*, 432 U.S. at 470), and that "it was not unconstitutional for a state to pay for the expenses of childbirth while at the same time refusing to pay for nontherapeutic abortions." *Fischer*, 502 A.2d at 118. Finally, we recognized that, in *Harris v. McRae*, 448 U.S. 297 (1980), the United States Supreme Court held that a state may enact a statute limiting funding to medically necessary abortions without offending the United States Constitution. *Fischer*, 502 A.2d at 118. We highlighted the high Court's reasoning in *Harris* that a woman's freedom of choice does not carry with it "a *constitutional entitlement to the financial resources to avail herself to the full range of protected choices*" because, as explained in *Maher*, "although government may not place obstacles in the path of a woman's exercise of her freedom of choice, it need not remove those not of its own creation. Indigency falls in the latter category." *Fischer*, 502 A.2d at 119 (quoting *Harris*, 448 U.S. at 316) (emphasis original).

Notably, this Court acknowledged in *Fischer* the appellants' argument that our state constitution should be interpreted more expansively than the United States Supreme Court has interpreted the federal constitution. *Id.* at 120.[6] Moreover, we explained that we are "free to interpret our Constitution in a more generous manner than the federal courts," and we observed that we have "not been shy" in doing so. *Id.* at 121. Nevertheless, we noted that, while the high Court's interpretation of the federal constitution is not binding, we may use as guidelines in interpreting our state constitution the same principles used by the high Court. *Id.*

Ultimately, we determined in *Fischer* that the provisions of our state constitution did not afford the appellants relief. Specifically, with respect to the appellants' claim that

---

[6] In this regard, although the *Fischer* Court did not specifically refer to Art. I, § 26 in setting forth the appellants' argument, the appellants' argument necessarily was limited to § 26, as Art. I, § 28 has no concomitant provision in the federal constitution.

the Coverage Exclusion violated equal protection principles under Art. I, § 1, and Art. III, § 32, we explained that, for purposes of analyzing state equal protection claims, there are three types of classifications, each of which requires a specific standard of judicial review, or scrutiny. *Id.* at 121 (citing *James v. Southeastern Pennsylvania Transportation Authority*, 477 A.2d 1302, 1306 (Pa. 1984)). Classifications which implicate neither suspect classes, nor fundamental rights, will be sustained if they meet the rational basis test, which requires that the classification be directed at the accomplishment of a legitimate governmental interest, and does so in a manner that is not arbitrary or unreasonable. *Id.* at 122. Classifications that involve a suspect class, or burden a fundamental right, will be sustained only if they survive strict scrutiny. *Id.* at 121 (citation omitted). Finally, if a classification involves an important, but not a fundamental right, or if it consists of a sensitive classification, a heightened, or intermediate, level of scrutiny is warranted. *Id.* at 121 (citation omitted).

We observed in *Fischer* that the right at issue was the "purported right to have the state subsidize the individual exercise of a constitutionally protected right, when it chooses to subsidize alternative constitutional rights." *Id.* We further noted that this right is not found in our state constitution, and, thus, cannot be considered a fundamental right. *Id.* Finally, we determined that the Coverage Exclusion did not affect a suspect class, as neither the United States Supreme Court, nor this Court, has held that "financial need alone identifies a suspect class for purposes of equal protection analysis." *Id.* at 121-22 (citation omitted). Accordingly, we concluded that the state's "disparate treatment" of indigent and non-indigent women, *id.*, need only satisfy the rational basis test. *Id.* at 123. Finding that the Coverage Exclusion was directed at the accomplishment of a legitimate governmental interest, namely, the preservation of life, and that it did so in a manner that was not arbitrary or unreasonable – *i.e.*, by preserving the life of the unborn child unless

an abortion was necessary to save the life of the mother, thereby preserving the maximum number of lives − we held that the Coverage Exclusion satisfied the rational basis test, and, therefore, did not violate our state constitution.[7]

We next considered in *Fischer* the appellant's claim that the Coverage Exclusion violated Art. I, § 26, which provides, as pertinent here, that the government shall not "discriminate against any person in the exercise of any civil right." Pa. Const. art. I, § 26. We explained that, although Art I, § 26 "does not in itself define a new substantive civil right," it does make "more explicit the citizenry's constitutional safeguards not to be harassed or punished for the exercise of their constitutional rights." *Fischer*, 502 A.2d at 123 (citation omitted). We cautioned, however, that Art. I, § 26 cannot "be construed as an entitlement provision; nor can it be construed in a manner which would preclude the Commonwealth, when acting in a manner consistent with state and federal equal protection guarantees, from conferring benefits upon certain members of a class unless similar benefits were accorded to all." *Id.*

Recognizing that we had not previously adopted a method for analyzing claims under Art. I, § 26, we determined in *Fischer* that it was appropriate to utilize the "penalty" analysis used by the United States Supreme Court, the focus of which is on whether a person has been penalized for exercising a constitutional freedom. *Id.* at 123-24 (citing, *inter alia*, S*hapiro v. Thompson*, 394 U.S. 618 (1969)). We noted that, under this analysis, relief is not warranted in situations "where a state merely seeks to encourage behavior by offering incentives, as distinct from where a state refuses to subsidize a person's exercise of a constitutional right." *Id.* (citing *Maher*, *supra*). Observing that the government, through the Coverage Exclusion, was not penalizing individuals for exercising a right to terminate their pregnancies, but, rather, "merely decid[ing] not to fund that choice in favor

---

[7] We noted that, even assuming that the classification warranted heightened (intermediate) scrutiny, it would still pass constitutional muster. *Id.* at 123.

of an alternative social policy," we held that the state's actions did not offend Art. I, § 26. *Id.*

Finally, we considered the appellants' claim that the Coverage Exclusion violated the Equal Rights Amendment in Art. I, § 28 of the Pennsylvania Constitution. The appellants in *Fischer* argued that the Act's disparate treatment of pregnant women who chose to give birth and those who chose to have an abortion violated the Equal Rights Amendment because "all medically necessary services for men are reimbursable, while a medically necessary abortion, which by its nature can only affect women, is not reimbursable," and, therefore, the state "adopted a standard entirely different from that which governs eligibility for men." *Fischer*, 502 A.2d at 124 (record citation omitted).

In addressing the appellants' argument, we first reiterated the purpose and intent of § 28, quoting from our 1974 decision in *Henderson v. Henderson*, 327 A.2d 60 (Pa. 1974):

> The thrust of the Equal Rights Amendment is to insure equality of rights under the law and to eliminate sex as a basis for distinction. The sex of citizens of this Commonwealth is no longer a permissible factor in the determination of their legal rights and legal responsibilities. The law will not impose different benefits or different burdens upon the members of a society based on the fact that they may be man or woman.

*Fischer*, 502 A.2d at 124 (quoting *Henderson,* 327 A.2d at 62).

We then observed that we have applied and relied on Art. 1, § 28 "numerous times" to strike or modify various rules which we found "offensive to its terms." *Id.* at 124-25 (collecting cases). We explained that,

> [i]n each of [these] cases, we have vigilantly protected the rights of women and men to be treated without reliance upon their sexual identity. In doing so we have recognized that distinctions which "rely on and perpetuate stereotypes" as to

> the responsibilities and capabilities of men and women are anathema to the principles of the [Equal Rights Amendment].

*Id.* at 125.

We rejected, however, the *Fischer* appellants' contention that, because only a woman can have an abortion, the Act necessarily utilizes "sex as a basis for distinction," emphasizing that "the basis for the distinction here is not sex but abortion, and the statute does not accord varying benefits to men and women because of their sex, but accords varying benefits to one class of women, as distinct from another, based on a voluntary choice made by the women." *Id.* We further stated:

> The mere fact that only women are affected by this statute does not necessarily mean that women are being discriminated against on the basis of sex. In this world there are certain immutable facts of life which no amount of legislation may change. As a consequence there are certain laws which necessarily will only affect one sex. Although we have not previously addressed this situation, other ERA jurisdictions have; and the prevailing view amongst our sister state jurisdictions is that the [ERA] "does not prohibit differential treatment among the sexes when, as here that treatment is reasonably and genuinely based on physical characteristics unique to one sex."

*Id.* (citations omitted). For all of the foregoing reasons, we concluded in *Fischer* that the Coverage Exclusion was not unconstitutional because it provided funds to indigent women for childbirth, but not for "nontherapeutic abortions." *Id.* at 118.

As noted, although the parties are different, Appellants in the case *sub judice* raise precisely the same arguments we addressed in *Fischer* – *i.e.,* that the Coverage Exclusion violates Art. I, § 28 because it uses sex as a basis of distinction, and violates Art. I, § 26 because it favors the right to childbirth over the right to terminate a pregnancy. Indeed, the majority acknowledges as much. *See* Majority Opinion at 55 ("In *Fischer*, . . . the Court addressed arguments like those presented here"); *id.* at 206 ("we are faced

with the same question answered by this Court in *Fischer*"). Despite this, the majority concludes that we are not bound to follow our unanimous decision in *Fischer*, and, indeed, overrules it. I cannot agree.

As we repeatedly have explained, the doctrine of *stare decisis* "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Stilp v. Commonwealth*, 905 A.2d 918, 954 n.31 (Pa. 2006) (citation omitted). It aims to foster the conviction that our decisions reflect the reasoned thought of a collective, of the court as a whole, and not the individual views of the judges who happen to be seated on the court at that time. Thus, pursuant to the doctrine of *stare decisis*, "for purposes of certainty and stability in the law, 'a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different.'" *Id.* at 966-67 (citation omitted).

Of course, *stare decisis* "is not a vehicle for perpetuating error, but rather a legal concept which responds to the demands of justice and, thus, permits the orderly growth processes of the law to flourish." *Id.* at 967 (citation omitted). Further, the demand of *stare decisis* "is at its weakest when we interpret the Constitution because our interpretation can be altered only by constitutional amendment or by overruling our prior decisions." *Commonwealth v. Alexander*, 243 A.3d 177, 197 (Pa. 2020) (citing *Agostini v. Felton,* 521 U.S. 203, 235 (1997)). At the same time, we have acknowledged that legislators "rely on this Court's interpretation of the law and precedent when crafting legislation, and that such reliance should not be undercut except for good reasons." *Stilp*, 905 A.2d at 967.

In determining whether it is appropriate to overrule precedent, we must consider a number of factors, including the quality of reasoning of the decision, its consistency with other decisions, the age of the decision, reliance interests, and the workability of the existing standard. *Knick v. Twp. of Scott, Pennsylvania,* 139 S. Ct. 2162, 2177-78 (2019). Critically, "[o]verruling a case always requires 'special justification'−over and above the belief 'that the precedent was wrongly decided.'" *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 447 (2015) (citation omitted).

Beginning with Art. I, § 28, I cannot conclude *Fischer*'s reasoning was "patently flawed." Majority Opinion at 109. Indeed, *Fischer* appropriately recognized the underlying purpose and intent of the provision, which, as we described in *Henderson*, *supra*, is "to eliminate sex as a basis of distinction," and eliminate the imposition of "different benefits or different burdens" on the basis of sex. *Fischer*, 502 A.2d at 124 (quoting *Henderson,* 327 A.2d at 62).

We observed in *Fischer* that the Coverage Exclusion does not impose different benefits or burdens on any individual based on the fact that they are a man or woman. Rather, the Coverage Exclusion distinguishes between two different groups of women – those who choose to have a child and those who choose to terminate a pregnancy. For this reason, we determined that it was not sex-based.

The majority suggests that *Fischer*'s reasoning was flawed because it ignored that "[l]aws that create subclasses within one sex have been found violative of the Equal Rights Amendment," Majority Opinion at 111, and it cites several cases in support of its position, including *Hartford Accident and Indemnity v. Insurance Comm'n*, 482 A.2d 542 (Pa. 1984) (holding that an insurance company's calculation of motor vehicle insurance

rates that factored in gender ran afoul of the Art. I, § 28), and *Henderson, supra* (holding that provisions of the divorce code that allowed alimony *pendente lite* to women but not men violated Art. I, § 28). However, as we explained in *Fischer*, in those cases, the disparate treatment was based on "distinctions which 'rely on and perpetuate stereotypes' as to the responsibilities and capabilities of men and women,'" whereas the Coverage Exclusion, which affects only women, "accords varying benefits to one class of women, as distinct from another, based on a voluntary choice made by the women." *Fischer*, 502 A.2d at 125. In my view, this was not an unreasonable conclusion by the *Fischer* Court.

I also disagree with the majority's suggestion that *Fischer*'s Art. I, § 28 analysis was inconsistent with this Court's prior holding in *Cerra v. East Stroudsberg Area School District*, 299 A.2d 277 (Pa. 1973). *See* Majority Opinion at 98. In *Cerra*, a school district regulation required women who were more than five months pregnant to resign. We concluded that the regulation constituted sex discrimination because it was based on an unsupported and erroneous presumption that pregnancy was a disability that warranted dismissal, and there was no equivalent presumption applicable to any disability attributable to men. In *Fischer*, we specifically distinguished *Cerra*, observing that "the decision whether or not to carry a fetus to term is so unique as to have no concomitance in the male of the species," and, therefore, that the Coverage Exclusion was "in no way analogous to those situations where the distinctions were 'based exclusively on the circumstance of sex, social stereotypes connected with gender, [or] culturally induced dissimilarities.'" *Fischer*, 502 A.2d at 126 (citations omitted).

Finally, while the majority asserts that its own *Edmunds*[8] analysis "leads to the unremarkable conclusion that to treat woman differently based on a characteristic unique to her sex is to treat her differently because of her sex," Majority Opinion at 83, I note that an *Edmunds* analysis is most salient when the state constitutional provision at issue has a federal counterpart. There is no federal counterpart to our Equal Rights Amendment and, thus, little force to an *Edmunds* analysis in this regard. *See League of Women Voters v. Commonwealth*, 178 A.3d 737, 802-03 (Pa. 2018) ("Free and Equal Elections Clause has no federal counterpart, and, thus, our seminal comparative review standard described in *Commonwealth v. Edmunds* [] is not directly applicable."). Moreover, every Pennsylvania case cited by the majority in its *Edmunds* analysis was discussed and/or acknowledged by this Court in *Fischer*.

I also am unable to conclude that *Fischer's* treatment of the appellants' Art. I, § 26 claim "suffers from incomplete reasoning and a disregard of our unique constitutional provisions in favor of blind (and incomplete) adherence to federal principles of Equal Protection." Majority Opinion at 212. As discussed above, for purposes of analyzing claims under Art. I, § 26, we embraced the "penalty" analysis utilized by the high Court, which focuses on whether a person has been penalized for exercising a constitutional freedom. *Fischer,* 502 A.2d at 123-24. The majority suggests that *Fischer* "offered no insight as to what constitutes a 'penalty' for purposes of our constitutional analysis," and it further submits that, "[p]ursuant to its most natural meaning, the term 'discriminate,' does not mean punishment, but rather partiality," Majority Opinion at 210-11. However, in *Probst v. Com., Dep't of Transp., Bureau of Driver Licensing*, 849 A.2d 1135 (Pa. 2004)

---

[8] *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991).

(holding that the denial of driving privileges for an additional year to recidivist DUI offenders who could not pay to install a required ignition interlock on their vehicles did not violate Art. I, § 26), we reiterated that a claim under Art. I, § 26 "is associated with an equal protection claim that focuses on the assertion that a person *has been penalized* for the exercise of a constitutional freedom."  *Id.* at 1142 n.14 (citing *Fischer,* 502 A.2d at 123–24) (emphasis added).

Assuming, arguendo, that our state constitution guarantees a right to reproductive autonomy, as the majority concludes, I find *Fischer's* application of the penalty test to be reasonable, as it is consistent with our recognition that Art. I, § 26 underscores "the citizenry's constitutional safeguards not to be harassed or punished for the exercise of their constitutional rights," but at the same time cannot be "construed in a manner which would preclude the Commonwealth, when acting in a  manner consistent with state and federal equal protection guarantees, from conferring benefits upon certain members of a class unless similar benefits were accorded to all."  *Fischer*, 502 A.2d at 123.

Finally, in my view, the Coverage Exclusion does not penalize an indigent woman for exercising her right to obtain an abortion simply because, unless the abortion is necessary to preserve the life of the mother, or the pregnancy resulted from rape or incest, the legislature has chosen not to fund it.  In this regard, I am unpersuaded by the majority's suggestion that *Fischer* improperly "flipped the table" by viewing the case as one involving "the right to a government-funded abortion," not about the right to abortion. *See* Majority Opinion at 204.  Indeed, in my view, *Fischer* precisely and accurately characterized the issue.  Through the Coverage Exclusion, the legislature has decided not to fund a woman's choice to obtain an abortion, except in three limited circumstances,

"in favor of an alternative social policy." *Fischer*, 502 A.2d at 124. This is a quintessential legislative function.

Contrary to the majority, I also find reliance interests favor adherence to *Fischer*. Since *Fischer* was decided nearly four decades ago, we have cited it with approval on numerous occasions, and in various contexts. *See, e.g.*, *Klein v. State Employees' Ret. Sys.*, 555 A.2d 1216, 1224 (Pa. 1989) (finding classifications created by the two-tiered retirement compensation scheme creating unequal classes of judges based solely upon their date of entry into the system were arbitrary, unreasonable and unconstitutional under the equal protection provisions of the Pennsylvania Constitution); *Love v. Borough of Stroudsburg*, 597 A.2d 1137, 1139-40 (Pa. 1991) (holding ordinance restricting parking by nonresidents within primarily residential district was a valid exercise of borough's police power and had a rational basis in promoting governmental interests in safety of residents and reducing traffic and did not violate equal protection provisions of the Pennsylvania Constitution); *Driscoll v. Corbett*, 69 A.3d 197, 213 (Pa. 2013) (concluding mandatory retirement provision for judges at age 70 did not violate Art. I, § 26).

The majority discounts the reliance interests with respect to *Fischer*'s analysis of Art. I, § 28 by observing that, "[o]utside of repeated reenactment of the Coverage Exclusion, we have no indication of the Legislature's reliance on the *Fischer* Court's interpretation of the Equal Rights Amendment." Majority Opinion at 118. However, as this Court has recognized, legislators "rely on this Court's interpretation of the law and precedent when crafting legislation, and . . . such reliance should not be undercut except for good reason." *See Stilp*, 905 A.2d at 967.

While acknowledging that "this Court has cited *Fischer* multiple times for its equal protection analysis framework," the majority suggests it has been "seldom cited and never applied" for its "unique holding" that we embrace a "penalty" analysis. Majority Opinion at 213. The majority reasons:

> While the General Assembly has continued to fund the current Medical Assistance scheme with the Coverage Exclusion in place, no legislation has been brought to our attention and our review has uncovered no evidence that the General Assembly has otherwise crafted any statutes since *Fischer* that have relied upon the *Fischer* Court's interpretation of Section 26 and its adoption of a penalty analysis.

*Id.* at 214. Once again, however, we have recognized that legislators rely on this Court's interpretation of the law when crafting legislation. The Coverage Exclusion is, for all intents and purposes, identical to the one challenged almost 40 years ago in *Fischer*, suggesting, at least implicitly, that the General Assembly relied on our decision.

Further, neither the majority, nor any party, has suggested that *Fischer* is "unworkable." *See Knick*, 139 S. Ct. at 2178 (explaining that the workability of the rule is a relevant factor in determining whether a past decision should be overruled). Indeed, *Fischer* sets forth clear parameters within which legislators, who are elected by taxpayers, can make funding decisions based on social policy, while at the same time protecting citizens from discrimination on the basis of their sex, or on the basis of their exercise of their civil rights.

Finally, I see little merit to Appellants' argument that the high Court's ruling in *Dobbs*, *see supra* note 6, provides "special justification" for overruling *Fischer*. Appellants' Supplemental Brief at 3. Although the majority offers that, in light of the decision in *Dobbs*, "it is logical and necessary for this Court to reconsider the premise of

*Fischer* and address the unique state constitutional questions that are otherwise unanswered," Majority Opinion at 212, in a non-majority expression, Justice Donohue offers that, "[r]egardless of whether *Fischer* is overruled, under current Pennsylvania law, a woman may obtain an abortion, subject to statutory regulations, until the gestational age of the fetus is twenty-four weeks." Opinion (Donohue, J., joined by Wecht, J.) at 130 n.93 (citing 18 Pa.C.S. § 3211). As I noted at the outset, the issue in *Fischer*, and in the case *sub judice*, is not a woman's right to abortion, but, rather, an indigent woman's right to have the government pay for an abortion in all circumstances.

Accordingly, I would reject Appellants' challenge to the Coverage Exclusion based on *Fischer*, as I find it to be binding precedent and, under the doctrine of *stare decisis*, controlling. For this reason, I dissent to sections III and IV of the majority opinion.